## 20077. MAYOR AND COUNCIL OF WASHINGTON v. MOSELEY.

DECIDED MAY 14, 1930. REHEARING DENIED JUNE 10, 1930.

*Earle Norman, B. W. Fortson,* for plaintiff.
*W. A. Slaton, Callaway & Howard,* for defendant.

LUKE, J. The mayor and council of the City of Washington, Georgia, caused a paving execution to be levied on certain real estate of J. W. Moseley. Moseley filed an affidavit of illegality to the levy, and, after the court had overruled a motion to dismiss the affidavit, the city assumed the burden of proof and offered evidence to sustain its case. When the city closed, and before Moseley had offered any evidence, the court entered the following judgment: "The within case coming on regularly to be tried in its order, after hearing the evidence it is ordered that the within affidavit of illegality be and the same is hereby sustained and the levies dismissed." By proper exceptions the plaintiff in error questions the overruling of its motion to dismiss the affidavit of illegality, the adverse rulings of the court during the trial, and the final judgment.

The municipal government of the town of Washington, Georgia, was vested in the "Mayor and Council of Washington, Georgia," a body corporate. See Ga. L. 1894, p. 187. The act of 1907 (Ga. L. 1907, p. 965), amending the former act, gives the "Mayor and Council of said city" plenary power "to pave . . the streets, squares and sidewalks of said city." This act further provides that said mayor and council shall have authority to assess one fourth of the cost of paving against abutting property on each side of the street "in proportion to the linear feet of such property abutting on the street or square to be improved;" that the amount of the assessment be "a lien on said real estate from the date of the passage of the ordinance providing for the work and making of

the assessment;" that the mayor and council shall have authority to enforce the collection of any assessment by execution issued by the clerk and levied by the city marshal; that "the owner of said real estate shall have the right to file his affidavit denying the whole or any part of the amount for which the execution issued, . . and the affidavit shall be returned to the superior court of Wilkes county, Ga., and there tried and the issue determined as in cases of illegality;" and that the mayor and council have authority "to pass such rules as they may, in their discretion, think necessary, to pave, macadamize, or otherwise improve, the streets, sidewalks and squares of said city, . . and to provide how the owners shall be served with notice by personal service or by publication."

On March 14, 1919, the city passed a resolution authorizing the county of Wilkes to act as its agent to contract with the State highway department to procure the paving of certain roads within the corporate limits of the city "from the points where the pavement now stops to the city limits on each side of said Lexington and Augusta roads."

On October 14, 1919, a resolution was duly passed reciting the authority of the city to do the paving and make the assessments against the adjacent property, and the fact that the city had determined to pave "East Main Street from the property of Mrs. Lena D. Fitzpatrick to the city limits going east, and Alexander Avenue from the end of the present pavement to the residence of M. A. Pharr in said city." The resolution further provided that upon the completion of the paving the city clerk assess one fourth of the cost thereof against the abutting property; that paving executions be issued by the clerk and levied by the marshal; and that each property owner should be notified of his assessment by publication in a designated newspaper, or by mail.

Upon the call of the case at the August, 1929, term of the superior court of Wilkes county, "the plaintiff moved the court to dismiss the affidavit of illegality, and each of the grounds thereof, on the ground that neither the affidavit as a whole, nor any of the grounds thereof, set forth a legal defense to the levy," and because the affidavit was not proceeding in accordance with said charter amendment of 1907, and "was not the affidavit provided by said statute as the remedy to arrest said proceedings." The court sustained the motion as to ground 3 of the affidavit, and overruled

the motion as to the remaining grounds. Exceptions duly filed bring to our consideration the propriety of the court's judgment in so far as it overruled the motion to dismiss.

The affiant alleges in his affidavit of illegality that the execution levied on his property described as "fronting and abutting 173 feet on Main street, and bounded on the other three sides by lots of W. W. Hill and Prof. Mosley," was proceeding illegally:

■ (a) "Because said Mayor and Council of Washington, Ga., have never levied any assessment against any property abutting on East Main Street, and have never entered on the minutes of said Mayor and Council of Washington, Ga., any assessment against any property, nor have they entered said assessment against said property on any record maintained and kept by said Mayor and Council of Washington, Ga."

(b) Because, in making said assessments, said Mayor and Council of Washington, Ga., "did not prescribe . . the lands against which the assessments were made in such way that the lands . . might be identified," and "said assessments . . do not in fact describe any lands whatsoever."

(c) Because the description in the execution "does not describe any particular tract of land" in the City of Washington so that the same can be identified, and because "there is no such tract of land which can be located by such description . . within the corporate limits" of said city.

(d) Because, being void for insufficiency of description, said assessments are not competent to support the issuance of an execution based thereon."

(e) Because, since the original assessments contained no description of any land, they could not be cured by the issuance of an execution containing a description not contained in the original assessment, and because no assessment roll was kept by the city.

■ Said assessment for $220.10 against property worth only about $80 is confiscatory and violative of paragraph 1, section 3, article 1 of the constitution of Georgia, and of the Federal constitution.

■ Because, since the property against which the assessment was made was adapted only for use as a farm, and was not "practically divisible into building lots, . . no benefit accrued, or would accrue, to the land from the paving."

■ Because the only land belonging to the defendant lying within the corporate limits of the city is a small triangle cut off from the southwest section of lands belonging to him, the eastern boundary of said triangle being the corporate limits of said city, "and said Mayor and Council are limited to an assessment on such lands as lie within said corporate limits, and by reason of the size, shape, location and surroundings of said triangular tract of land, no benefits accrue to said lands, and the assessment exceeds the total value of the land."

The insistence that the defendant in execution could only show that the whole or some part of the amount of the assessment was not due, and nothing further, is not sound. Under a similar charter provision, it was held in the case of *Mayor &c. of Gainesville* v. *Dean,* 124 *Ga.* 750 (53 S. E. 183), that the defendant had the right to set up in his affidavit of illegality "whatever would have the effect of extinguishing liability for such assessment, whether such defense arise from payment, unconstitutionality of the law under which the assessment was made, or such irregularity in the manner in which the assessment was made as to make it illegal, or otherwise." See also *Horkan* v. *Moultrie,* 154 *Ga.* 444, 449 (114 S. E. 888) ; *City of Waycross* v. *Cowart,* 164 *Ga.* 721 (139 S. E. 521). Neither does it appear from the affidavit of illegality that the defendant in execution is estopped from interposing the defenses made. Without discussing· in detail the grounds of the affidavit of illegality, we hold that the affidavit of illegality did set up a defense to the levy, and that the court properly overruled the motion to dismiss.

In undertaking to make out a prima facie case, the city offered in evidence two papers as the original assessments made by the clerk against the property in question. Copies of these papers appear in the record as Exhibits A and B. Exhibit A has reference to paving done on Alexander Avenue, and is dated May, 1920. Since these exhibits are similar in form, and both purport to show assessments against the property of many different people, we shall only set out Exhibit B, and the assessment therein against the property of J. W. Moseley. It is as follows:

City of Washington, Washington, Ga.

K. A. Wilheit, Mayor.   S. R. Brooks, City Clerk.

Paving Assessments.   January, 1921.

East Main St., Fitzpatrick's to East City Limits. Width 18'.
Cost of paving including grading, concrete, engineering and inci-
dentals, 8850 sq. yds. @ $2,7634.....................$24,355.98
One-half cost of paving, etc......................... 12,177.99
Total frontage abutting property.................... 8,5820'
Cost per front foot............................... 1.42

| Owner | Frontage | Cost | Amount |
|---|---|---|---|
| Prof. J. W. Moseley | 488 | 1.42 | 692.96 |

Property description. West side street.

The court excluded these exhibits upon the following objections:
1. There is no evidence that the alleged assessments were in fact
made "by the officers charged with making them by the ordinance
of Oct. 14, 1919." 2. "That the alleged assessments not having
been entered of record on any form of record kept and maintained
by the Mayor and Council of Washington, Ga., they are not proved
to have been the assessments they purport to be, and the papers
offered in evidence as being the assessments do not appear by any
competent evidence to have been made as required under the ordi-
nance." 3. "That the alleged assessments do not contain the
description of any lands whatever, and because there is no descrip-
tion of any lands in said assessments, they are illegal and void."

The following appears in the record in regard to these exhibits:
"Although the foregoing document marked A was a clipping from
the newspaper in which legal advertisements in Wilkes county were
published, it was admitted that there was an original document
similar in form to the foregoing document marked B, and identical
in form and substance with this clipping; that the original was
misplaced in some way, and the clipping substituted for it in the
records of the city. It was also admitted that both these papers
(A and B) were duly caused to be published in said newspaper
by the mayor and council of the City of Washington about the
time that they bear date."

A consideration of the correctness of the court's ruling rejecting
the said assessments necessitates a consideration of the evidence.

F. E. Boline testified that he had been clerk of the city since
January 1, 1924; that S. R. Brooks, now a resident of Pennsyl-
vania, was city clerk on March 14, 1919; that witness' immediate
predecessor in office was H. W. Paschal; that witness was custodian
of the city's records; that when he became clerk he found among

the records the two papers headed, "Washington, Georgia, paving assessments, May, 1920, and January, 1921;" and that the first of these papers was a clipping from a newspaper, and the second a sheet of the city's letter paper. This witness further testified as follows: "There was not in the office any permanent record of any kind except those two sheets of paper to indicate what those assessments were, or where they were. These two papers are not signed by any officer of the City of Washington. There is nothing on these two papers to indicate that they are records of the City of Washington, except the fact that I found them in the safe. I knew what they were. If I had had no outside information, I would have had no idea what the papers were. . . So far as I know they were not entered on the minutes."

Harry Smith testified that he was a member of the council of the City of Washington in 1919, and had been ever since; that S. R. Brooks was clerk of the city in 1919. This witness further swore: "I have seen those papers headed 'Washington, Georgia, paving assessments,' before. They were made out by the clerk and taken from the records of the engineer who did the actual measurements. They were kept among the records of the City of Washington as part of the records of the city. They were intended to have been pasted in the minute-book. Those two papers (A and B) represent assessments that were made by the City of Washington against the property abutting on the streets paved pursuant to those ordinances and resolutions, and are the records of the City of Washington of such paving assessments. I do not think the city had any record of those assessments except those papers. So far as I know, that is all the record the city had outside of the ordinances. . . These assessments were published in the local newspaper."

We do not think that the alleged assessments were made as required by the ordinance, or that they were in fact shown to be assessments of the city. The several papers purporting to be amendments to the two original assessments are of more doubtful authenticity than the two original assessments, and the court properly refused to allow them to be introduced in evidence.

Before closing this discussion, we desire to say that in our judgment a municipality in a case like this should keep some permanent record of its assessments. In this connection, we quote from the

decision of *Bacon* v. *Savannah,* 91 *Ga.* 500 (2) (17 S. E. 749):
"There ought to be an assessment roll, showing the total cost of
the work, and as to two thirds thereof, how it is apportioned
amongst the several abutting parcels, including the street intersec-
tions, giving the sum chargeable to each parcel, with the name of
the owner, the mayor and aldermen being treated as owner of the
street intersections. This roll, when officially ascertained to be
correct, should be entered on the minutes of the mayor and alder-
men for due authentication and preservation." See also *City of Ca-
milla* v. *Cochran,* 160 *Ga.* 424 (4), 433 (128 S. E. 194). It is
apparent from the *Bacon* case that the mayor and council should
determine whether or not the assessment is correct, and that, if it
is found to be correct, it should be entered upon some permanent
record kept by the municipality. The wisdom of the foregoing is
strikingly shown by the record in the case at bar. For instance,
the original assessment against Moseley's property stated that his
frontage was 488 feet and the amount due by him $692.96, while
the purported amendment to the assessment set out that his front-
age was 173 feet and the amount of his assessment $245.66. If
the procedure indicated were followed, it would not only safeguard
the city, as pointed out in the *Bacon* case, but would also protect
the citizen whose property is being assessed. Assessment proceed-
ings are summary, the effect of them being to compel a citizen to
pay for improvements whether he wants them or not, and it should
clearly appear that such proceedings are valid in every particular.

The court having properly rejected evidence essential to show
that valid executions were issued, it follows that, in our opinion,
the court properly dismissed the levy. Since, however, it might
be concluded from the language of the judgment that the judge sus-
tained the affidavit of illegality, when, as a matter of fact, there
was no evidence to sustain several allegations therein, we direct
that at the time the remittitur is made the judgment of the trial
court, the judge so frame his judgment that it will clearly show
that its effect is merely to dismiss the levy.

*Judgment affirmed, with direction. Bloodworth, J., concurs.*

BROYLES, C. J., dissenting. The allegations in an affidavit of
illegality must be construed most strongly against the affiant and
in favor of the upholding of the levy—which is presumed to be
proceeding legally. When so construed, the affidavit in the instant

case failed to set forth any legal defense to the levy made. Furthermore, the affidavit was not the affidavit provided for by the statute as the remedy to arrest the proceedings. In my opinion the court erred in refusing to dismiss the affidavit of illegality, and that error rendered the further proceedings in the case nugatory.